UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
BARBARA A. NICHOLS,                       )
                                          )
            Plaintiff,                     )
                                          )
      v.                                   )        Civil Action No. 03-1831 (PLF)
                                          )
CARL J. TRUSCOTT, Director,               )
Bureau of Alcohol, Tobacco, Firearms      )
and Explosives, et al.,[1]                 )
                                          )
            Defendants.                    )
_____)

OPINION

        This matter is before the Court on defendants' motion to dismiss or, in the

alternative, for summary judgment.  Plaintiff's *pro se* complaint asserts Title VII and other

claims arising from years of alleged harassment and abusive behavior by plaintiff's co-workers

and superiors at the Bureau of Alcohol, Tobacco and Firearms ("ATF"),[2] where plaintiff has

worked since about 1977.  Plaintiff has filed two motions for injunctive relief based on the

claims set forth in her Second Amended Complaint, as well as on another apparent claim of

discrimination related to the relocation to West Virginia of the ATF's Firearms, Explosives, and

Arson Services Division ("FEAS"), where plaintiff currently is employed.[3]

_____

        [1]      ATF Director Carl J. Truscott has been substituted for Bradley A. Buckles as the
named defendant under Rule 25(d) of the Federal Rules of Civil Procedure.

        [2]      Now the Bureau of Alcohol, Tobacco, Firearms and Explosives.

        [3]      Since the filing of plaintiff's complaint, the FEAS has been renamed the Firearms
and Explosives Services Division ("FESD").  For purposes of clarity, this Opinion refers to the
division as the FEAS.

Upon consideration of the arguments of the parties and the entire record in this case, and for the reasons stated below, the Court grants defendant's motion in its entirety and denies plaintiff's motions for injunctive relief.

## I.  BACKGROUND

Plaintiff Barbara Buckles, an African-American female, has been employed by the ATF since starting there as a clerk typist in 1977.  See Second Amended Complaint (Mar. 31, 2005) ("Compl.") ¶ 7.  In 1983 she began work with the Firearms, Explosives, and Arson Services Division, and has worked in several branches within that division.  She currently works as a Specialist (GS-level 12) in the Firearms and Explosives Imports Branch ("FEIB"), a sub-unit of the FEAS, where she has been since 1996.  See id. ¶¶ 8, 10, 12.

According to the allegations in the Second Amended Complaint, plaintiff's experience working in the FEIB has been unpleasant, to say the least.  The 67-page complaint alleges myriad instances of harassment and abuse by plaintiff's supervisors and co-workers, including (1) the assignment to plaintiff of menial or inconsequential duties, see Compl. ¶¶ 50-53, 63; (2) denial of promotions and failure to select plaintiff for positions she applied for, see Compl. ¶¶ 26, 34; (3) denial of recognition for plaintiff's hard work and accomplishment, see Compl. ¶¶ 31, 41, 98; (4) abusive behavior by plaintiff's co-workers, see Compl. ¶¶ 37-41, 105; and (5) failure by management to address adequately plaintiff's complaints, see Compl. ¶¶ 45, 58.  Other allegations in the complaint focus not on plaintiff's working conditions, but on the favorable treatment afforded to her co-workers, many of whom are also African-American females.  Plaintiff also makes some general allegations regarding the favorable treatment

afforded by management to Hispanic and Caucasian employees *vis a vis* African-American employees.  Significant portions of the complaint also are devoted to criticizing the poor judgment and inadequate work performance of plaintiff's co-workers and superiors.  See, e.g., Compl. ¶¶ 44, 47, 49, 54-55, 59-60, 71, 90, 98, 100.

Plaintiff has sought administrative recourse for her grievances on several occasions; however, she has filed and allowed to be processed and investigated only one formal complaint, EEOC Number 100-A1-7913.[4]  Plaintiff initially sought EEO counseling on March 28, 2000.  She filed a formal complaint on April 25, 2000.  An investigation ensued, and a three-day administrative hearing was held in October and November of 2002.  Ten witnesses testified.

On April 25, 2003, the EEOC administrative judge who conducted plaintiff's hearing issued a finding of no discrimination on plaintiff's complaint.  See Nichols v. Snow, EEOC No. 100-A1-7913X (EEOC Apr. 25, 2003) ("EEOC Decision").  On July 9, 2003, the Department of Justice issued a Final Order finding no discrimination and fully implementing the EEOC Administrative Judge's decision.  See Department of Justice Final Order in the Case of

---

[4]     On October 23, 2000, plaintiff filed another complaint, Agency Number 01-1013, regarding her supervisor's deliberate assignment to plaintiff of "tedious" work assignments, as well as the disruptive behavior of a co-worker.  On March 1, 2001, however, plaintiff filed a letter requesting that the agency cancel her complaint.  See Plaintiff's Opposition to Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment ("Pl's Opp."), Att. B.  Plaintiff filed another informal complaint on April 9, 2001, alleging color, race and sex discrimination, and retaliation in her non-selection for a Program Analyst position (Vacancy Announcement Numbers 01-191DH and 00-400).  See Pl's Opp., Att. C.  On July 18, 2001, plaintiff again sought EEO counseling, this time for race, color and sex discrimination.  See Pl's Opp., Att. D.  Plaintiff unconditionally withdrew this complaint and her April 9 complaint, however, on August 22, 2001.  See Declaration of Anthony Torres ("Torres Decl."), Att. B.

Barbara A. Nichols v. Bureau of Alcohol, Tobacco and Firearms, D.J. No. 187-9-5 (July 9, 2003) ("DOJ Order").[5] This action followed.

Plaintiff's Second Amended Complaint, filed on March 31, 2005, advances eight claims for relief: discrimination on the basis of plaintiff's race and sex (Count I); defamation (Count II); gross mismanagement (Count III); hostile work environment (Count IV); harassment/hostility (Count V); retaliation - reprisal (Count VI); negligence (Count VII); and exemplary and punitive damages (Count VIII).[6] The complaint names former ATF Director Bradley A. Buckles and former United States Attorney General John Ashcroft as defendants.[7]

## II. DISCUSSION

Defendants have filed a motion to dismiss plaintiff's complaint or, in the alternative, for summary judgment on all of plaintiff's claims. Defendants' motion raises numerous arguments, the most salient of which are that: (1) plaintiff has failed to exhaust her administrative remedies for many of her claims; (2) much of the conduct of which plaintiff

---

[5]    In addition to upholding the EEOC's substantive determinations, the DOJ Order and supporting memorandum also observed that plaintiff's first four claims were time-barred because she had failed to contact an EEO counselor within 45 days of the alleged discriminatory events or actions. See Department of Justice Memorandum Explaining Final Order, D.J. No. 187-9-5 (July 9, 2003) at 4 (citing 29 C.F.R. § 1614.107(a)(2)).

[6]    Although plaintiff's negligence claim appears erroneously to have been denominated "Count VI," it is clear that it is correctly labeled Count VII. See Compl. ¶ 111.

[7]    In her complaint, plaintiff refers to numerous unnamed "defendants," including current and former supervisors and co-workers as well as EEO officials, against whom she purports to assert various claims for relief. See, e.g., Compl. ¶¶ 10, 12, 13, 21-25, 30-35, 40-41. Those individuals, however, are not defendants in this case because the complaint names as defendants only the United States Attorney General and the Director of the ATF, and service of process was effected only on these two government officials (as well as on then-United States Attorney Roscoe Howard).

complains does not constitute an "adverse employment action" under Title VII; (3) plaintiff has

failed to allege facts sufficient to establish a hostile work environment; (4) several of the putative

causes of action in plaintiff's complaint do not exist or do not apply in this context; and

(5) because the United States Attorney General is the only proper defendant in this case, all other

defendants should be dismissed from the action.[8]  The Court grants defendants' motion with

respect to all claims.

### A. Standards for Motions to Dismiss and for Summary Judgment

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal

Rules of Civil Procedure should not be granted unless the plaintiff can demonstrate no set of

facts that supports her claim entitling her to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46

(1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).  In evaluating

the motion to dismiss, the Court must accept the factual allegations in the complaint as true and

draw all reasonable inferences in favor of the plaintiff.  See Harris v. Ladner, 127 F.3d 1121,

1123 (D.C. Cir. 1997).  While the complaint is to be construed liberally, the Court need not

---

[8]      Defendants' argument that the United States Attorney General is the only proper defendant in this case is well-taken.  Civil actions proceeding under Title VII are restricted to naming only the head of the agency as the defendant.  See 42 U.S.C. § 2000e-16(c) (providing for civil suit under Title VII following exhaustion of administrative remedies and specifying that in any such civil action "the head of the department, agency, or unit, as appropriate, shall be the defendant."); see also Baker v. Library of Congress, 260 F. Supp. 2d 59, 68 (D.D.C. 2003) (citing Hackley v. Roudebush, 520 F.2d 108 (D.C. Cir. 1975) and Wilkins v. Daley, 49 F. Supp. 2d 1, 3 (D.D.C. 1999)).  The Bureau of Alcohol, Tobacco and Firearms (now the Bureau of Alcohol, Tobacco, Firearms and Explosives) is not an independent federal agency, but a law enforcement agency within the United States Department of Justice, an agency headed by Attorney General Alberto Gonzales.  Because the Court grants defendants' motion for summary judgment, however, all defendants are dismissed from the case and the Court need not resolve defendants' motion in this respect.

accept factual inferences drawn by the plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions.  See Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996);  Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

When evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court may dispose of the motion on the basis of the complaint alone, but also may consider materials beyond the pleadings.  "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).  This Court has interpreted Herbert to allow a court to "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."  Scolaro v. D.C. Bd. of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d at 197), aff'd Scolaro v. D.C. Bd. of Elections and Ethics, No. 00-7176, 2001 U.S. App. LEXIS 2747, at *1 (D.C. Cir. Jan. 18, 2001); see also Ass'n of Merger Dealers, LLC v. Tosco Corp., 167 F. Supp. 2d 65, 69 (D.D.C. 2001); Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).  When a motion to dismiss under Rule 12(b)(1) has been filed, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Research Air, Inc. v. Norton, 2006 U.S. Dist. Lexis 10784, at *14-*15 (D.D.C. 2006); Felter v. Norton, 412 F. Supp. 2d 118, 2006 U.S. Dist. Lexis 2642, at *5 (D.D.C. 2006); Primax Recoveries, Inc. v. Lee, 260 F. Supp. 2d 43, 47 & n.3 (D.D.C. 2003).

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits or declarations, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in her favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

On a motion for summary judgment, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  When considering a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor."  Id. at 255; see also Washington Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).  If, however, the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. To defeat summary judgment, a plaintiff must have more than "a scintilla of evidence to support [her] claims."  Freedman v. MCI Telecomms. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

7

### B. Exhaustion of Administrative Remedies

Federal employees must exhaust their administrative remedies before filing suit under Title VII.  See 42 U.S.C. § 2000e-16(c); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997).  Employees who allege discrimination must consult with an agency EEO counselor before filing a written complaint with the agency accused of discriminatory practices.  See 29 C.F.R. § 1614.105(a); 29 C.F.R. § 1614.106(a)-(c).  The agency must then investigate the matter, after which the complainant may demand an immediate final decision from the agency or a hearing before an EEOC administrative judge.  See 29 C.F.R. § 1614.106(e)(2); 29 C.F.R. § 1614.108(f).  Complainants may file a civil action after receiving a final decision from the agency or after a complaint has been pending before the EEOC for at least 180 days.  See 42 U.S.C. § 2000e-16(e); 29 C.F.R. § 1614.407.  "Complainants must timely exhaust these administrative remedies before bringing their claims to court."  Bowden v. United States, 106 F.3d at 437; see Price v. Greenspan, 374 F. Supp. 2d 177, 184 (D.D.C. 2005) ("federal employees may only bring Title VII lawsuits in federal district court if they have exhausted remedies available through administrative processes."); Baker v. Library of Cong., 260 F. Supp. 2d at 65 ("Title VII confers the right to file a civil action in federal court only when a party has been 'aggrieved by the final disposition of his [administrative] complaint, or by the failure to take final action on his complaint.'") (quoting 42 U.S.C. § 2000e-16(c)).[9]  The

---

[9]    As this Court discussed in Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 135 (D.D.C. 2004), amended in part on other grounds 400 F. Supp. 2d 257 (D.D.C. 2005), the Supreme Court's decision in Nat'l RR. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002), established that "each discrete adverse employment action individually triggers Title VII's procedural requirements," so that a plaintiff alleging a discrete discriminatory action "must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others."  Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d at 138 (citing

exhaustion of administrative remedies is not a jurisdictional requirement of the statute, however;
the failure to exhaust is an affirmative defense that must be raised by the defendant (and has been
in this case).  See Francis v. City of New York, 235 F.3d 763, 767 (2d Cir. 2000); Washington v.
Washington Metro. Area Transit Auth., 160 F.3d 750, 752 (D.C. Cir. 1998); see also Fernandez
v. Centerplate/NBSE, 2006 U.S. App. LEXIS 7372, at *8-*9 (D.C. Cir. 2006) (quoting Arbaugh
v. Y&H Corp., 126 S.Ct. 1235, 1245, --- U.S. --- (2006)) ("when Congress does not rank a
statutory limitation on coverage [of a statute] as jurisdictional, courts should treat the restriction
as nonjurisdictional in character").

Plaintiff's administrative complaint, Agency No. 00-1143, alleged that she was
discriminated against on the basis of her race, sex and/or color when: (1) her requests for detail
assignments from June 26, 1996 through December 1999 were denied; (2) she was assigned
tedious work such as photocopying from 1996 through 1999; (3) she was not provided the
opportunity to serve as acting Branch Chief from 1996 through 1999; (4) she was denied special
recognition and monetary awards for work accomplishments from 1996 through 1999; (5) on
March 7, 2000, management permitted one of plaintiff's co-workers to tamper with the office
time log to give the appearance that plaintiff was absent from work; and (6) her co-workers made
derogatory comments and verbal threats to her between 1996 and July 2002.  See EEOC
Decision at 1-2.  Accordingly, although the complaint alleges facts going well beyond those

_____

Nat'l RR. Passenger Corp. v. Morgan, 536 U.S. at 114).  Hostile work environment claims, on
the other hand, involve not discrete acts of discrimination but repeated conduct which "cannot be
said to occur on any particular day," Nat'l RR. Passenger Corp. v. Morgan, 536 U.S. at 115, and
a plaintiff who has properly exhausted such a claim may in federal court support it with related
conduct that was not part of her administrative claims.  See Coleman-Adebayo v. Leavitt, 326 F.
Supp. 2d at 137-38.

underlying plaintiff's EEOC complaint, the plaintiff's discrimination and retaliation claims are limited to these six exhausted claims.  See Park v. Howard Univ., 71 F.3d 904, 907-08 (D.C. Cir. 1995) (civil suit under Title VII is only as broad as scope of any investigation that reasonably could have been expected to result from initial charge of discrimination).[10]

An exhaustion requirement also applies to plaintiff's tort claims.  The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"), provides the exclusive avenue of relief for parties asserting tort claims against the United States.  The FTCA requires plaintiffs to satisfy administrative exhaustion requirements by "present[ing] the claim to the appropriate Federal agency."  28 U.S.C. § 2675(a).  This presentment requirement "requires a claimant to file

---

[10]    Plaintiff argues that the EEOC Administrative Judge's April 25, 2003 ruling "re-victimized the Plaintiff, as it failed to address or mention the Plaintiff's primary complaints as noted in the Prehearing Report of August 21, 2002."  Compl. ¶ 14.  The Court cannot locate any such "Prehearing Report" in the evidence filed in this case.  More importantly, prior to the start of the EEO investigation, the agency's EEO Regional Complaint Center mailed plaintiff a letter on June 30, 2000, accepting her complaint and setting forth as "the issues to be investigated" the six claims that ultimately were adjudicated in the administrative process.  See Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment ("Mot. Summ. J."), Att. C, Letter to Barbara A. Nichols (June 30, 2000).  The letter further informed plaintiff that "If you disagree with the [statement of] issues, please notify me within writing within five days of receipt of this letter. . . . If no response is received, I will assume that you agree with the issues and will proceed with the investigation of the complaint."  Id.  Plaintiff did not challenge this presentation of the issues, and will not be heard to challenge the scope of her EEOC proceedings now that they are complete.

Plaintiff also appears to take issue with certain other aspects of the processing of her EEO claims, asserting, for example, that defendants failed to provide adequate discovery, see Compl. ¶ 15-16, that "the Administrative Judge seemed to favor the Defendants" during plaintiff's EEOC hearing, id. ¶ 18, and that the transcript of her administrative hearing contained errors on which the Administrative Judge relied, see id. ¶ 17.  Title VII, however, "does not create an independent cause of action for the mishandling of an employee's discrimination complaints."  Young v. Sullivan, 733 F. Supp. 131, 132 (D.D.C. 1990), aff'd 946 F.2d 1568 (D.C. Cir. 1991); see also Ficken v. Rice, 2006 U.S. Dist. LEXIS 2689, at *15 (D.D.C. 2006); Robinson v. Chao, 403 F. Supp. 2d 24, 34 (D.D.C. 2005).

(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." GAF Corp. v. United States, 818 F.2d 901, 919 (D.C. Cir. 1987).  Because the FTCA is a limited waiver of the United States' sovereign immunity, the exhaustion of administrative remedies under the statute is a jurisdictional prerequisite, so that the Court lacks subject matter jurisdiction over common law tort claims against the United States for which a plaintiff has not exhausted her administrative remedies. See Simpkins v. District of Columbia, 108 F.3d 366, 371 (D.C. Cir. 1997) (citing Odin v. United States, 656 F.2d 798, 802 (D.C. Cir. 1981)).  Here, plaintiff has failed to exhaust her administrative remedies for her negligence and defamation claims.  These claims therefore must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  See Webb v. Magaw, 880 F. Supp. 20, 25 (D.D.C. 1995).

*C. Plaintiff's Title VII Claims (Discrimination, Retaliation, Hostile Work Environment)*

1.  Discrimination (Count I)

Plaintiff asserts claims of discrimination, retaliation, and a hostile work environment based on her race and sex.[11]  To survive a motion for summary judgment on a Title VII employment discrimination claim, a plaintiff must first introduce evidence to support a *prima facie* case of discrimination, showing that: (1) she is a member of a protected class; (2) she has suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005); Stella v. Mineta, 284

_____

[11]    Plaintiff's EEOC complaint also raised claims of discrimination based on plaintiff's color; however, the Second Amended Complaint limits its allegations of discrimination to race and sex.  See Compl. ¶ 3.

F.3d 135, 145 (D.C. Cir. 2002); Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).  One way a

plaintiff can show that an adverse action gives rise to an inference of discrimination is by

demonstrating that she was treated differently from similarly situated employees who are not part

of the protected class.  See George v. Leavitt, 407 F.3d at 412.[12]  A plaintiff who attempts to

make out a *prima facie* case on this basis bears the burden of proving that proffered comparators

are are in fact similarly situated to plaintiff.  See Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir.

1999) ("A plaintiff must also demonstrate that 'all of the relevant aspects of her employment

situation were 'nearly identical' to those of the male' employee.").

      Making out a *prima facie* case in this fashion establishes a presumption of

discrimination, and shifts the burden to the defendant to produce evidence that the challenged

action was taken for a legitimate, nondiscriminatory reason.  See Holcomb v. Powell, 433 F.3d

889, 896 (D.C. Cir. 2006).  Once a defendant has done so, the presumption of discrimination

"simply drops out of the picture," and "the plaintiff must show that a reasonable jury could

conclude from all of the evidence that the adverse employment decision was made for a

discriminatory reason."  Id. at 896-97 (quoting Burke v. Gould, 286 F.3d 513, 520 (D.C. Cir.

2002), and Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003)).  "All of the evidence" may

include (1) evidence establishing the plaintiff's *prima facie* case; (2) evidence attacking the

employer's proffered explanation for its actions; and (3) any further evidence of discrimination

--------

[12]    There are other ways to make out the third element of a *prima facie* case, see George v. Leavitt, 407 F.3d at 412 (employee may satisfy third prong in failure to hire case by "show[ing] that the adverse employment action 'is not attributable to the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'"), but none apply here.

that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer.  Holcomb v. Powell, 433 F.3d at 897.

Defendants argue that plaintiff has failed to establish a *prima facie* case of discrimination, retaliation, or hostile work environment with regard to any of her exhausted claims, because she has alleged no adverse employment action. "An 'adverse employment action' . . . is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'"  Broderick v. Donaldson, 437 F.3d 1226, 2006 U.S. App. LEXIS 3248, at *15-*16 (D.C. Cir. 2006).  An adverse action has occurred "when an employee 'experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'"  Holcomb v. Powell, 433 F.3d at 902 (quoting Forkkio v. Powell, 306 F.3d 1127, 1130-31 (D.C. Cir. 1999)).  "Not everything that makes an employee unhappy is an actionable adverse action. . . . While 'being aggrieved is necessary to state a claim for [discrimination or] retaliation, . . . it is not sufficient to demonstrate that a particular employment action was adverse.'"  Broderick v. Donaldson, 2006 U.S. App. LEXIS 3248, at *15-*16 (quoting Holcomb v. Powell, 433 F.3d at 902).  "'[P]urely subjective injuries,' such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions[.]"  Holcomb v. Powell, 433 F.3d at 902 (quoting Forkkio v. Powell, 306 F.3d at 1130-31).[13]

---

[13]     The "objectively tangible harm" requirement serves in part to guard against "judicial micromanagement of business practices."  Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001).

None of the six separate incidents or series of incidents set forth in plaintiff's administrative complaint are sufficient to support a *prima facie* case of discrimination on the basis of race or sex, either because they do not constitute adverse employment actions or because in each case plaintiff has introduced no evidence that would support an inference of discrimination.

The first of plaintiff's exhausted claims is that plaintiff's requests for detail assignments between 1996 and 1999 were repeatedly denied. This denial does not constitute an adverse employment action, because it did not have "materially adverse consequences" or result in "objectively tangible harm." See Holcomb v. Powell, 433 F.3d at 902. Nor does it give rise to an inference of discrimination, because plaintiff has neither identified a similarly situated employee not in her protected classes who was treated differently in this respect nor introduced any other evidence from which a reasonable jury could infer race or sex discrimination.[14] This is especially so in light of the fact that plaintiff was in fact offered detail assignments –which she declined– on at least two occasions. See Compl. ¶¶ 77, 82, 84, 85, 86. Plaintiff has thus failed to make out a *prima facie* case of discrimination on this basis.

Similarly, plaintiff's second claim, that she was assigned tedious work, involves no "adverse employment action" and also fails to give rise to an inference of discrimination. Plaintiff complains that she was called upon to perform "menial tasks" such as photocopying, and that "office tasks were not equally, fairly, or reasonably assigned to all Specialists." Compl.

---

[14]     Plaintiff does allege in her complaint that Hispanic and Caucasian employees were routinely allowed to work outside the FEIB, "[w]ithin less than two years of being reassigned" there. Compl. ¶ 86. Plaintiff has, however, identified no individual similarly situated to her who received favorable treatment with regard to detail requests.

¶¶ 52, 53, 59, 63.  Plaintiff's disproportionate assignment to menial duties – ones which,

concededly, are within her job description as a Specialist – could not so alter the "terms,

conditions, or privileges of employment" as to constitute an adverse action.  The D.C. Circuit has

stated that "Title VII . . . does not authorize a federal court to become 'a super-personnel

department that reexamines an entity's business decisions.'"  Barbour v. Browner, 181 F.3d

1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir.

1986)).  How an employer chooses to apportion less desirable work is a paradigmatic example of

such a business decision, which courts will not review except in extreme circumstances.  Cf.

Holcomb v. Powell, 433 F.3d at 903 (adverse action found where employee, for at least two

years, "was assigned duties not only far below her grade level but below the level at which she

had entered federal employment ten years earlier") (emphasis in original).  Moreover, plaintiff

has proffered no evidence nor even set forth allegations to support any inference that these work

assignments were made with discriminatory animus (all but one of the other Specialists who

plaintiff claims were not as frequently assigned menial tasks are also African-American females,

and so members of the same protected classes as plaintiff, see Compl. ¶ 52).  Plaintiff therefore

has failed to establish a *prima facie* case of discrimination on the basis of this claim.

    The third basis for plaintiff's discrimination claim is that, despite repeated

requests, she was not permitted to serve as Acting Branch Chief for the first eleven months of her

tenure at FEIB, while a Hispanic male at the same GS-level as plaintiff was allowed to serve in

the position of Acting Branch Chief "shortly upon his arrival" in the branch.  See Compl. ¶¶ 22,

24.  Although plaintiff appears to have identified a similarly situated individual from outside her

protected classes who was treated differently, so as to satisfy the third element of her *prima facie* case of discrimination, she again has failed to allege any adverse employment action.

Even if plaintiff had been denied outright the opportunity to serve as Acting Branch Chief – a temporary position which appears to carry no increase in pay or substantial change in duties – it does not appear that this would so have affected "the terms, conditions, or privileges of her employment or her future employment opportunities" so as to constitute an adverse employment action.  See Brown v. Brody, 199 F.3d at 457; Lloyd v. Ashcroft, Civil No. 97-1287, Slip Op. at 6 (D.D.C. July 17, 2001).  That being the case, a mere delay of several months before plaintiff was allowed to assume the position certainly does not suffice.

Plaintiff's fourth claim of discrimination is that she was denied special recognition and monetary awards for her work accomplishments.  See Compl. ¶¶ 31, 44, 98.  The loss of a cash bonus can constitute an adverse employment action under Title VII in some situations, see Russell v. Principi, 257 F.3d at 817; in this case, however, plaintiff has identified no particular occasion on which she was denied a bonus to which she claims she otherwise would have been entitled.  It is clear that plaintiff did receive cash bonuses on numerous occasions, see Compl. ¶¶ 89, 101, and that the real gravamen of her complaint is that other African-American Specialists "whose work ethics and work performance were prevalently and consistently . . . less than satisfactory" also received bonuses – to which plaintiff believes they were not entitled – on many occasions when plaintiff received awards, as well as "on other occasions when Plaintiff did not[.]" Compl. ¶ 90.  That other individuals may have received favorable treatment plaintiff does not believe they deserved simply is not an adverse employment action with respect to plaintiff.

16

Moreover, it can give rise to no inference of discrimination because those individuals also were members of plaintiff's protected classes.[15]

Plaintiff also complains of a March 7, 2000 incident in which management allegedly permitted one of plaintiff's co-workers to tamper with the office time log to give the appearance that plaintiff was absent from work. See Compl. ¶ 106. This incident, too, is insufficient to support a *prima facie* case of discrimination, both because it did not constitute an adverse employment action – plaintiff was not charged with leave, subject to discipline, or otherwise materially affected as a result – and also because none of the circumstances surrounding it could support an inference that it was motivated by discriminatory animus. See EEOC Decision at 7 ("[A]lthough the Complainant alleges that the action gave the appearance that she was not at work, the action did not result in her being either charged with leave or tangibly affected in any other way.").

Plaintiff therefore has failed, based on the claims asserted in her exhausted administrative complaint, to make out a *prima facie* case of discrimination on the basis of either race or sex under Title VII. Defendants therefore are entitled to summary judgment on this claim.

---

[15]    Again, the individuals in question (those who allegedly received undeserved bonuses) are other African-American females, and thus are members of the same protected classes as plaintiff. The complaint does allege that "[g]enerally, the African Americans received less substantial monetary awards compared to the Hispanic and Caucasian Specialists." Compl. ¶ 89. But even if plaintiff had introduced any evidence in support of this allegation – which she has not – it again has no bearing on whether plaintiff was discriminatorily denied any cash award.

2.  Hostile work environment (Counts IV and V)[16]

Plaintiff's Title VII claims also rest on her asserted persistent harassment by her co-workers, from approximately 1996 to the present.[17]  Because it involves not an adverse action by her employer, but rather abuse at the hands of her co-workers (coupled with her employer's failure to stop the harassment), plaintiff's claim in this respect is properly framed as one of a hostile work environment.

Title VII prohibits race or sex discrimination that creates a hostile work environment if the "discriminatory intimidation, ridicule, and insult" is sufficiently abusive to affect a "term, condition, or privilege" of employment.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)).  To make out a *prima facie* case of hostile work environment, plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based

---

[16]     Count IV of plaintiff's *pro se* Amended Complaint is labeled "Hostile Work Environment," while Count V is labeled "Harassment/Hostility."  Count V does not raise issues distinct from plaintiff's hostile work environment claim, nor does it appear that a separate and independent claim of "hostility" exists under federal law.  It is also clear that plaintiff does not assert a claim of *quid pro quo* sexual harassment.  See Lukewitte v. Gonzales, 436 F.3d 248, 258 (D.C. Cir. 2006).  Accordingly, the Court will incorporate the allegations in Count V into plaintiff's hostile work environment claim, and dismiss under Rule 12(b)(6) any independent claim of "hostility".

[17]     Unlike her other discrimination claims, plaintiff's hostile work environment claim is not limited solely to the incidents set forth in her EEOC complaint.  Because a hostile work environment claim comprises "a series of separate acts that collectively constitute one 'unlawful employment practice,'" a hostile work environment claim may encompass both early events occurring outside of the statute of limitations for an administrative claim and events occurring after the plaintiff has filed an administrative charge.  See Nat'l RR. Passenger Corp. v. Morgan, 536 U.S. at 117.  Nonetheless, the allegations of harassment dating from after plaintiff's administrative complaint are no more actionable under Title VII than the ones set forth in plaintiff's EEO claim.

on plaintiff's membership in the protected class; (4) the harassment affected a term, condition or

privilege of employment; and (5) the employer knew or should have known of the harassment

and failed to take any remedial action.  See Davis v. Coastal Int'l Sec., Inc., 275 F.3d 1119,

1122-23 (D.C. Cir. 2000) (citing Yeary v. Goodwill Indus.-Knoxville, Inc., 107 F.3d 443, 445

(6th Cir. 1997)); see also Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006).[18]  In

determining whether an environment is sufficiently hostile or abusive to support a claim, courts

are to look at "'all the circumstances,' including the 'frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance.'"  Faragher v. Boca

Raton, 524 U.S. 775, 787-88 (1998) (quoting Harris v. Forklift Sys., 510 U.S. at 23).  "[A]

workplace environment becomes hostile for the purposes of Title VII only when offensive

conduct 'permeates [the workplace] with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment.'"  Stewart v.

Evans, 275 F.3d 1126, 1133 (D.C. Cir. 2002) (quoting Barbour v. Browner, 181 F.3d at 1347-48)

(modifications in original).

        Plaintiff indubitably has satisfied the "unwelcome harassment" prong of her *prima*

*facie* case.  She cites numerous instances of harassing conduct by unspecified co-workers,

alleging, for example, that unnamed persons in 1994 removed plaintiff's "sweaty bra" from her

gym bag and placed it across her computer keyboard, and in 1995 cut plaintiff's radio headset

cord into three parts, see Compl. ¶ 106; and that other individuals spread defamatory falsehoods

---

[18]    Hostile work environment claims based on racial harassment are reviewed under
the same standard as those based on sexual harassment.  See Nat'l RR. Passenger Corp. v.
Morgan, 536 U.S. at 116 n.10.

about plaintiff at work, see Compl. ¶¶ 40-41.  Plaintiff also alleges that a particular African-

American Specialist on various occasions physically threatened plaintiff, called her a "trifling

bitch," announced aloud that she hated plaintiff, called plaintiff a "dumb bitch," and also said to

plaintiff: "You think you're white and more superior than the rest of us."  Compl. ¶ 106.

Plaintiff alleges that another individual periodically "made negative comments about plaintiff's

attire," and in 1999 pantomimed shooting plaintiff while saying "I'm going to kill that bitch."  Id.

Plaintiff cites numerous other instances of harassing conduct, some reaching back almost to the

beginning of plaintiff's employment with the ATF in 1984.  See id.

       While this harassment indeed seems severe, and might have so affected the terms

and conditions of plaintiff's employment as to support the fourth prong of her *prima facie* case,

plaintiff has failed to establish any relation between the alleged harassment and plaintiff's

membership in a protected class.  Rather than arising from any discriminatory animus based on

plaintiff's race or sex, this harassment appears quite clearly to have arisen from personal conflicts

between plaintiff and her co-workers and/or supervisors.[19]  As the Supreme Court has stated,

"Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only

at 'discrimination . . . because of . . . sex [or race].'"  Oncale v. Sundowner Offshore Servs., 523

U.S. 75, 80 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. at 25).  Title VII emphatically

is not a "general civility code for the American workplace."  Id.  "While plaintiff describes an

unhealthy relationship with [her] supervisors, [she] may not proceed on [her] hostile work

---

[19]     Some of the behavior about which plaintiff complains was not in fact directed
towards plaintiff, but towards other individuals (black and white, and male and female) in
plaintiff's office.  See, e.g., Compl. ¶ 55, 56, 60.

environment claim absent some evidence that [her] supervisors' conduct was based on racial animus."  Lloyd v. Ashcroft, Civil No. 97-1287, Slip Op. at 13 (D.D.C. Sept. 28, 2000).

Only a handful of the comments (and none of the conduct) by plaintiff's co-workers could have been even remotely linked to plaintiff's membership in a protected class – specifically, three statements referring to plaintiff as a "bitch," and the single statement that plaintiff "thought she was white" and therefore better than her co-workers.  Compl. ¶ 106.  These isolated statements, while no doubt offensive to the plaintiff, simply are not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" on the basis of plaintiff's race or sex.  See Harris v. Forklift Sys., Inc., 510 U.S. at 21.  "'[M]ere utterance of an . . . epithet which engenders offensive feelings in a employee' does not sufficiently affect the conditions of employment to implicate Title VII."  Id. (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. at 67) (modifications in original).  Accordingly, plaintiff's claim of a hostile work environment cannot survive defendants' motion for summary judgment.

### 3.  Retaliation (Count VI)

Title VII of the Civil Rights Act prohibits agencies from discriminating against employees for pursuing a good faith, reasonable charge of discrimination, whether the final determination finds discrimination or not.  See 42 U.S.C. § 2000e-3(a); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d at 135.  To survive a motion for summary judgment, a plaintiff alleging retaliation must demonstrate that (1) she engaged in statutorily protected activity, (2) her employer took an adverse employment action against her, and (3) a causal connection exists

between the two.  See Hussain v. Nicholson, 435 F.3d at 366 (citing Brown v. Brody, 199 F.3d at 452).

Plaintiff has satisfied the first prong of her retaliation claim, as it is uncontested that she engaged in statutorily protected activity.  Plaintiff sought EEO counseling in March 2000, June 2000, July 2001, and February 2003.  See Compl. ¶ 13; Torres Decl. ¶¶ 3-7.  She filed formal complaints on April 26, 2000, October 23, 2000, and August 15, 2001.[20]  As the Court has discussed, however, the first five of the six claims administratively exhausted by plaintiff (and so appropriate for consideration here) all are insufficient to establish that she suffered any adverse employment action.  Any retaliation claim based on these facts must fail for the same reason.

The facts underlying plaintiff's sixth exhausted administrative claim – the persistent harassment perpetrated by plaintiff's co-workers and tolerated by her superiors – requires closer scrutiny.  A hostile work environment can give rise to a retaliation claim under Title VII.  See Hussain v. Nicholson, 435 F.3d at 366; Singletary v. District of Columbia, 351 F.3d 519, 526 (D.C. Cir. 2003).  To prevail on such a claim, a plaintiff must show that her employer, in retaliation for plaintiff's protected activity, subjected her to "discriminatory intimidation, ridicule, and insult' of such 'severity or pervasiveness [as] to alter the conditions of [her] employment and create an abusive working environment.'"  Hussain v. Nicholson, 435 F.3d at 366 (quoting Harris v. Forklift Sys., 510 U.S. at 21-22).

Even assuming that plaintiff's harassment by her co-workers rose to this level of severity, however, plaintiff has failed to demonstrate a causal connection between the harassment

---

[20]     Plaintiff withdrew her October 23, 2000 complaint on January 15, 2001, and formally withdrew her August 15, 2001 complaint on August 22, 2001.  See Torres Decl. ¶ 5-6.

in question and her protected activity.  A plaintiff may demonstrate such a causal connection by

showing that her employer had knowledge of her protected activity and that the adverse action

took place shortly thereafter.  See Holcomb v. Powell, 433 F.3d at 903.  Such a showing,

however, requires a "close temporal proximity" between the protected activity and the adverse

action.  See id.  Here, plaintiff engaged in protected activity first in 2000, and then a few times a

year over the next few years.  The harassment alleged by plaintiff, however, extends at least as

far back as 1996, when she was first assigned to FEIB.  The harassment thus began at least four

years before plaintiff engaged in any protected activity, and there is no indication that it

intensified (or that her supervisors were less inclined to rein it in) after plaintiff initiated her

protected activity.  The temporal relationship between the protected activity and the harassment

thus does not suggest a causal relationship between the two, and in fact suggests the opposite:

that plaintiff's asserted harassment by her co-workers was motivated not by a desire to retaliate

against her for her EEO activities, but by personality conflicts.  Plaintiff's factual allegations

strongly suggest that any harassment she suffered was not a reaction to plaintiff's complaints

about race or sex discrimination, but rather was motivated by plaintiff's (perhaps justifiable)

complaints about her co-workers' disruptive behavior, insubordination, or poor work

performance.  See, e.g., Compl. ¶¶ 37, 39-41, 55, 64, 70-71, 100.[21]

Plaintiff does allege that, after plaintiff began to pursue EEO remedies, "the

Caucasian defendants (managers) began complaining about the Plaintiff and then the defendants

appeared to be joining forces against the Plaintiff with the very employees the Plaintiff for years

---

[21]    Although the Whistleblower Protection Act may protect plaintiff from agency
reprisal for such activities, see 5 U.S.C. § 2302(b)(8)(A), plaintiff has asserted no cause of action
under that statute.  See Pl's Opp. at 21.

had been complaining about harassing her."  Compl. ¶ 110.  Plaintiff's purely subjective

perception that her managers were "joining forces" with plaintiff's rivals, however, does not

constitute an adverse employment action because plaintiff makes no argument (and adduces no

evidence) that it resulted in "objectively tangible harm" to plaintiff.  See Russell v. Principi, 257

F.3d at 818.

   Accordingly, plaintiff has failed to establish a *prima facie* case of retaliation, and

defendants are entitled to summary judgment on this claim as well.

### C.  Other claims

   Plaintiffs' other claims fail as a matter of law.  Counts II and VII assert claims of

defamation and negligence, respectively.  Insofar as she asserts such tort claims against her

employer, the Federal Tort Claims Act provides the exclusive avenue of relief.  See 28 U.S.C.

§§ 1346(b), 2671-80.  As the Court has discussed, supra, plaintiff must exhaust her

administrative remedies under that statute before seeking relief in this Court.  See 28 U.S.C.

§ 2675(a); GAF Corp. v. United States, 818 F.2d at 904 & n.7.  Plaintiff has not done so, and her

tort claims therefore must be dismissed for lack of subject matter jurisdiction.  Moreover,

because defamation claims against the government are barred by the FTCA itself, the complaint

fails to state a claim in this respect.  See 28 U.S.C. § 2680(h); Gardner v. United States, 213 F.3d

735, 738 (D.C. Cir. 2000).

   Count III purports to assert a claim of "gross mismanagement."  Although the

Whistleblower Protection Act ("WPA") protects employees of federal agencies from agency

reprisal for whistleblowing activity such as the disclosure of "gross mismanagement," see 5

U.S.C. § 2302(b)(8), there is no independent cause of action for "gross mismanagement" under federal law.  Accordingly, Count III fails to state a claim and will be dismissed under Rule 12(b)(6).[22]  Count VIII, the final count in the Second Amended Complaint, seeks "Exemplary and Punitive Damages."  Because plaintiff does not prevail on any of her substantive claims, her claim for punitive damages also must be dismissed.

### D.  Plaintiff's Motions for Injunctive Relief

Plaintiff has filed two motions for injunctive relief.  The first seeks her reassignment to a position outside the FEAS.  She seeks this reassignment (1) to "prevent the Plaintiff from being the continued (or potential) victim of further hostility, harassment, embarrassment, ridicule, and retaliation," Plaintiff's Request Permanent Injunction for Relief ("Mot. Inj.") at 19; and (2) to avoid the consequences of the intended relocation of the FEAS office to Martinsburg, West Virginia, see id. at 15.  The second motion seeks directly to block the relocation of the FEAS.  Plaintiff asserts that if she is relocated to that facility she will "continue working with many of the same defendant co-workers and others, experiencing the same longstanding unfair employment practices and hostile work conditions."  See Plaintiff's Motion Requesting the Court for an Emergency Hearing Regarding Her Request for an Injunction for Relief ("2d. Mot. Inj.") at 1.

As best the Court can discern, plaintiff's motions for injunctive relief are based first on the claims set forth in her Second Amended Complaint, and second on the claim that the relocation of FEAS is part of a "long-term master plan" by ATF to force "problem" African-

---

[22]    Plaintiff disclaims any intent to seek relief in this action under the WPA itself. See Pl's Opp. at 21.

American employees either to resign, retire, or relocate to the remote facility in Martinsburg.  See
2d. Mot. Inj. at 2.

In determining whether to enter a permanent injunction, the Court considers a
modified iteration of the factors it utilizes in assessing preliminary injunctions: (1) success on the
merits, (2) whether the plaintiffs will suffer irreparable injury absent an injunction, (3) whether,
balancing the hardships, there is harm to defendants or other interested parties, and (4) whether
the public interest favors granting the injunction.  See Nat'l Ass'n of Psychiatric Health Sys. v.
Shalala, 120 F. Supp. 2d 33, 44 (D.D.C. 2002).  Actual success on the merits is naturally a
prerequisite to permanent injunctive relief.  Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs, 145
F.3d 1399, 1408-09 (D.C. Cir. 1998).

Because the claims set forth in plaintiff's Second Amended Complaint do not
succeed on their merits, the Court will not grant an injunction on those grounds.  Plaintiff's
second motion for injunction, however, appears to raise another claim under Title VII:  that the
relocation of FEAS itself is intended to discriminate against African-Americans.  The gist of this
complaint, as best the Court can determine from plaintiff's filing, is that defendants seek by this
relocation to isolate troublesome African-American employees in the FEIB, and either to force
them out of employment with the agency or to remove them to the FEAS office in West Virginia,
where they will be assigned work that is "repetitious, segregated, and labor intense."  2d Mot. Inj.
at 3.  Plaintiff, however, has produced neither evidence nor even specific factual allegations
(beyond the mere fact that FEAS is being relocated) to support any aspect of her theory, to say
nothing of providing a basis from which the Court could infer, directly or indirectly,
discriminatory animus behind the decision to relocate the FEAS.

26

Moreover, even if plaintiff could make out a *prima facie* case of discrimination in this respect, defendant has proffered legitimate, nondiscriminatory reasons for its action:  by relocating FEAS, it intends to centralize the ATF's firearms processing functions in a single location (the FEIB's Office of Enforcement Programs and Services is already located in Martinsburg) and upgrade from the division's current, inadequate office space.  See Declaration of Kevin L. Boydston, Att. to Defendant's Opposition to Plaintiff's Motion Requesting the Court for an Emergency Hearing Regarding Her Request for an Injunction for Relief.  Plaintiff has neither challenged this proffered justification nor provided other evidence from which a reasonable jury could conclude that the defendants' action is discriminatory.  See Holcomb v. Powell, 433 F.3d at 897.  Accordingly, plaintiff cannot achieve success on the merits of this claim, and the Court will not grant her motion for injunction on this ground.

## III. CONCLUSION

It is clear from all of plaintiff's filings in this case that she believes her workplace to be poorly managed and captive to persons of domineering and unpleasant personalities, and that she believes herself to be the object of persistent and undeserved harassment.  Title VII, however, was enacted to redress discrimination (in this case, on the basis of sex and race) in employment, rather than to ensure that the American workplace would remain free from poor management or harassment of all kinds, no matter how motivated.  See, e.g., Oncale v. Sundowner Offshore Servs., 523 U.S. at 80 ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.").  Plaintiff's claims simply do not fall

within the scope of Title VII – some because the circumstances complained of do not rise to the

level of "adverse employment actions," and others because plaintiff provides no evidence from

which a reasonable jury could infer a discriminatory motive.[23]  This is true both of the claims set

forth in plaintiff's Second Amended Complaint and exhausted through EEOC administrative

procedures, and the additional allegations set forth in plaintiff's motions for injunctive relief.

    With respect to plaintiff's discrimination claims, then, the Court (1) finds that

there is no genuine issue of material fact, and grants judgment as a matter of law for defendants,

on those claims plaintiff has exhausted administratively under Title VII; and (2) dismisses for

failure to state a claim those portions of plaintiff's claims that were not properly exhausted.  The

Court dismisses plaintiff's negligence claim for lack of subject matter jurisdiction because she

failed to exhaust her administrative remedies under the FTCA, and dismisses for failure to state a

---

[23]    To the extent that plaintiff has legal redress for the facts set forth in her complaint, it may fall not under Title VII but under the Whistleblower Protection Act, 5 U.S.C. §§ 1201 *et seq.*, which prohibits agencies from taking any personnel action based upon, *inter alia*, the disclosure of information by an applicant that the applicant reasonably believes evidences violation of any law, rule or regulation.  See 5 U.S.C. § 2302(b)(8)(A)(i).  An employee who believes she has been the victim of a prohibited personnel practice must first complain to the Office of Special Counsel ("OSC"), which is required to investigate the complaint "to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred."  5 U.S.C. § 1214; see also Stella v. Mineta, 284 F.3d at 142 (citing Weber v. United States, 209 F.3d 756, 758 (D.C. Cir. 2000) (describing whistle-blower protection procedures under Title 5)).  If the OSC determines that a prohibited personnel practice has occurred, it must report its findings to the Merit Systems Protection Board ("MSPB"), and it may petition the MSPB to take action on behalf of the employee.  If the OSC's investigation does not support the complaint, the employee still may bring an individual action before the MSPB. See 5 U.S.C.§ 1221.  Any decision of the MSPB is appealable to the United States Court of Appeals for the Federal Circuit.  See 5 U.S.C. §§ 1214(a)(3), 1221, 7703.

claim plaintiff's claims of defamation, "gross mismanagement," and "hostility."[24]  The Court

therefore grants defendants' motion to dismiss or, in the alternative, for summary judgment and

denies plaintiff's motions for injunctive relief.

    An Order consistent with this Opinion will issue this same day.


           /s/_____
           PAUL L. FRIEDMAN
           United States District Judge

DATE: March 30, 2006

---

[24]  As the Court has discussed, Count V purports to include claims of both "harassment" and "hostility," but does not raise claims independent of plaintiff's hostile work environment discrimination claims.  The Court therefore grants summary judgment for defendants on Count V to the extent it raises a claim of discrimination, but dismisses any independent claim of "hostility" for failure to state a claim.